**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **LOUIS HOWARD and LEDORA HOWARD,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:12-0522-KD-M** |
| | ) | |
| **CITY OF DEMOPOLIS, ALABAMA,** | ) | |
| **et al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This action is before the Court on the motion for summary judgment, brief in support and exhibits, and suggested determinations of fact and conclusions of law filed by defendants City of Demopolis, Demopolis Police Department, Mayor J. Michael Grayton, Chief of Police Tommie J. Reese, and Sergeant Richard Bryant (docs. 19-21); the response in opposition with exhibits and response to defendants' suggested determination of fact filed by Louis and Ledora Howard ("the Howards")(doc. 23); and the defendants' reply (doc. 24). Upon consideration, and for the reasons set forth herein, the motion for summary judgment is GRANTED as to all claims against the City of Demopolis, Mayor Grayson, Chief Reese, and the Demopolis Police Department; summary judgment is granted in favor of Sergeant Bryant as to Count Six for assault, Count Eight for outrage, and Count Nine for loss of consortium; and denied as to Sergeant Bryant as to Count One for excessive force, Count Three for false arrest, Count Five for negligence, and Count Seven for malicious prosecution.

I.     <u>Procedural history</u>

The Howards filed their complaint against the defendants on August 8, 2012 (doc. 1-1).  Plaintiff Louis Howard brings Count One pursuant to 42 U.S.C. §1983 against all defendants for violation of his constitutional rights under the Fourth, Fifth and Fourteenth Amendments[1]; Count Two pursuant to 42 U.S.C. § 1983 against the City of Demopolis for adopting policies, procedures, practices or customs within the Demopolis Police Department that allow the use of excessive force; Count Three pursuant to 42 U.S.C. § 1983 against Sergeant Bryant in his individual and official capacity for false arrest; Count Four against the City of Demopolis and Chief Reese for negligent supervision of Sergeant Bryant; Count Five against Sergeant Bryant for negligence; Count Six against Sergeant Bryant for assault; Count Seven against the defendants for malicious prosecution; and Count Eight against the defendants for outrage.  Ledora Howard brings Count Nine for loss of consortium.

On August 21,2012, defendants removed the action to this Court and filed their answer.  They admitted certain allegations such as the location of the incident alleged in the complaint, the Howards' citizenship, that Ms. Howard posted a bond for Mr. Howard, that Mr. Howard filed a notice of claim for certain actions against the City, and the Howards' marital status, but otherwise denied all allegations.

---

[1] Howard alleged that defendants deprived him of "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from excessive use of force by persons acting under color of state law; e) the right to be free from false arrest; and the right to just compensation for taking of property". (Doc. 1-1, Count One, p. 5)

II.    Findings of fact[2]

Louis Howard was diagnosed with paranoid schizophrenia in 1982. He takes Thorazine and Risperidone to control his illness. On May 25, 2011, he and his wife Ledora were traveling home to Vicksburg, Mississippi after visiting family in Michigan.  Ms. Howard was driving and Mr. Howard was in the front passenger seat of their van.  After they left Michigan, Mr. Howard had a mental episode because he had not been taking his medication.  Ms. Howard called 911 for help. The police and paramedics arrived and convinced Mr. Howard to take his medication. After about thirty minutes, they were on their way to Vicksburg.   They stopped to rest in Indiana and Ms. Howard had difficulty convincing Mr. Howard to get back in the van.  After he did, she continued driving.

When they neared Demopolis, Alabama, they were detoured because of floodwater. Mr. Howard was afraid of the rising water and his mental state deteriorated.  While Ms. Howard was driving, Mr. Howard took off his clothes and threw them and other personal items out the van window.   At about 2:30 a.m., Ms. Howard called 911 for help and was told to pull over until help arrived.

Officers Marcus Williams, Ellen Campbell and Kevin Johnson from the Demopolis Police Department responded to the call.  When they arrived Mr. Howard was seated in the van.  The officers called Sergeant Bryant who was their supervisor.  When he arrived, Ms.

---

[2] The majority of the findings of fact are taken from the Howards' statement of facts and the Court has made its findings by "review[ing] the record, and all its inferences, in the light most favorable to" the Howards as the nonmoving party." *Benson v. Tocco, Inc*., 113 F.3d 1203, 1207 (11th Cir. 1997). However, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

Howard and the officers were standing on the passenger side of the van, watching Mr. Howard who was sitting in the front passenger seat. Mr. Howard remembers that he was "sitting there quiet". (Doc. 23-3, p. 2, Howard Deposition) Sergeant Bryant asked Ms. Howard if she had clothes for Mr. Howard. She responded that she did, and she and Officer Campbell went to the rear of the van to get the clothes. Ms. Howard got a pair of pants and shirt. She gave the clothes to Officer Campbell. Mr. Howard put on the clothes and got back into the van.

At this point, Sergeant Bryant was standing by the front passenger door, Officer Williams was standing on the passenger side front and Officer Campbell was at the rear of the van with Ms. Howard as she "put things away".

Ms. Howard then heard "tussling and words, talking words." (Doc. 23-2, p. 52, Ledora Howard deposition) She looked up and saw Sergeant Bryant "tussling and pulling" Mr. Howard through the window of the van. She stopped repacking and went to see what was going on. She saw Mr. Howard on the ground with Sergeant Bryant. She did not see Sergeant Bryant hit Mr. Howard, but Mr. Howard's lip was bleeding. Ms. Howard did not hear any statements made by Mr. Howard to the officers.

Mr. Howard states that Sergeant Bryant approached the window and began to talk to him and in response, he asked Sergeant Bryant where was his wife, Ms. Howard. Sergeant Bryant kept "hammering" at Mr. Howard, asking "what was his problem" and "kept rattling at" him, and in response, "every time he asked" Mr. Howard asked "where is my wife". (Doc. 23-3, p. 3, Louis Howard deposition) At this time, the door to the van was closed but the window was all the way down. Officer Johnson was standing by the passenger door. Officer Williams was standing two feet away from Sergeant Bryant and

Mr. Howard.  Mr. Howard states that he had complied with the officers' instructions to remain in his seat.

Mr. Howard states that he did not try to hit Officer Johnson.  Instead, while Mr. Howard was sitting in the vehicle, Sergeant Bryant punched him twice, which knocked him out and caused him to slump out the window. When Mr. Howard woke up he was" kind of whaling his arms", and Sergeant Bryant grabbed him and pulled him out of the window and onto the ground. (Doc. 23-4, p. 2, Campbell deposition)   According to Mr. Howard, while he was on the ground, Sergeant Bryant hit him with his fist and busted his lip.  Mr. Howard did not strike Sergeant Bryant.  He did not refuse to get up off the ground, nor fight back, struggle or try to resist.[3]

Officer Johnson testified that when he arrived Mr. Howard was agitated, making irrational and vulgar statements and twice tried to come out of the van window.  Officer Johnson testified that Sergeant Bryant was asking Mr. Howard to calm down and then Mr. Howard came back out of the van window and "just started swinging" at Sergeant Bryant. He testified that Mr. Howard hit Sergeant Bryant and then Bryant hit Mr. Howard twice and pulled him out of the van.  (Doc. 20-4, p. 3-4)

Officer Williams testified that when he arrived Mr. Howard was "lashing out" verbally, threatening his wife, threatening the officers, "pointing and swinging his arms", and acting "violent and belligerent". (Doc. 20-5, p. 2-3)  Officer Williams testified that Mr.

---

[3] At his deposition, defense counsel asked Mr. Howard  – "Do you remember hitting a police officer?  Do you remember taking a swing at a police officer?  He answered "No".  (Doc. 20-1, p. 10)  Mr. Howard submitted an affidavit wherein he states that he did not hit, punch or threaten Sergeant Bryant or any other police officer.  He explained that "[d]uring the deposition, the attorney asked me if I remembered taking a swing at a police officer.  I answered "no' because I did not take a swing at any police officer." (Doc. 23-8)  The court does not find the affidavit to be clearly inconsistent with the deposition.

Howard threatened Sergeant Bryant who then told him to calm down, but Mr. Howard "leaped out the window" and "slapped" or "hit" Sergeant Bryant "open handed in the face twice." (*Id.*, p. 4)

Officer Campbell stated that Mr. Howard became irate with Sergeant Bryant while he was questioning him. She stated that Mr. Howard yelled and cursed at Sergeant Bryant, threatened to beat him and tried to start a fight. Mr. Howard then came half way out the window and hit Sergeant Bryant on the cheek on the left side and Sergeant Bryant hit Mr. Howard two times in the face. Mr. Howard then slumped over the vehicle and Sergeant Bryant pulled him out the window. (Doc. 20-8)

Sergeant Bryant testified that when he first arrived the officers were trying to get Mr. Howard to take his medication and after he took his medication, they were "waiting on the medication to take hold" and that Mr. Howard was "irate". (Doc. 20-3, p. 4) He also testified that Mr. Howard was acting and talking irrationally and making threats to the officers and Ms. Howard. Sergeant Bryant testified that Mr. Howard came out of the van window, up to his waist, and struck him twice before he struck Mr. Howard and knocked him out. (Doc. 20-3, p. 6-7, 12) Sergeant Bryant pulled Mr. Howard out of the window, placed him on the ground, and he arrested Mr. Howard for assaulting an officer.[4] Mr. Howard resisted but was handcuffed by Sergeant Bryant with the assistance of Officer Williams, placed in leg restraints by Sergeant Bryant, put in the patrol car, and taken to the jail by Officer Williams. (Doc. 20-3, p. 7, 12, Bryant Deposition; Doc. 20-5, p. 8, Williams deposition) Officer Williams testified that it took four officers to place Mr. Howard in the jail cell because of his resistance. (Doc. 20-5, p. 8, Williams deposition)

---

[4] The charge was later reduced to harassment.

III.    Conclusions of law

      A.    Summary judgment standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a party asserts "that a fact cannot be or is genuinely disputed", the party must

> (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)(B).

Defendants, as the party seeking summary judgment bear "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Clark*, 929 F.2d at 608 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986)).

Once defendants have satisfied their responsibility, the burden shifts to plaintiffs as the non-movant, to show the existence of a genuine issue of material fact. *Id*. "In reviewing

whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determination of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct. 1598, 1608-1609 (1970); *see Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir.2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices.").

However, "[a] moving party is entitled to summary judgment if the nonmoving party has 'failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *In re Walker*, 48 F. 3d 1161, 1163 (11th Cir. 1995) (quoting Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2552). Additionally, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Overall, the court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d

1283, 1288 (11th Cir. 2004) (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003)).

B. <u>Analysis</u>

1. <u>The Howards' claims against the Demopolis Police Department</u>.

Defendants argue that the Demopolis Police Department is not a proper defendant because it is not a separate legal entity capable of being sued. The Howards did not respond to this argument. Thus, the Court concludes that they have abandoned their claims against the Demopolis Police Department. *Edmondson v. Bd. of Trustees of Univ. of Ala.*, 258 Fed. Appx. 250, 253 (11th Cir. 2007) ("In opposing a motion for summary judgment, a party may not rely on her pleadings to avoid judgment against her. There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995)); *Floyd v. Home Depot USA*, 274 Fed. Appx. 763, 765 (11th Cir. 2008) (finding that the district court properly determined that Floyd had abandoned his ADA retaliation termination claim because he did not respond to Home Depot's argument on that claim) (citing *Resolution Trust Corp.*, 43 F.3d at 599).

Moreover, in *Dean v. Barber*, the Eleventh Circuit Court of Appeals explained that "Sheriff's departments and police departments are not usually considered legal entities subject to suit" . . . but "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." 951 F.2d 1210, 1214 (11th Cir.1992), (quoting Fed.R.Civ.P. 17(b)). In that regard, this Court has previously determined that police

departments are not a proper legal entity capable of being sued. *Blunt v. Tomlinson,* 2009 WL 921093, *4 -5  (S.D. Ala. Apr. 1, 2009) ("In Alabama, a city's police department is not a suable entity or a proper party under state law or for § 1983 purposes.") (citing *Hawkins v. City of Greenville*, 101 F.Supp.2d 1356, 1363 (M.D.Ala. 2000); *accord Lee v. Wood*, 2007 WL 2460756, at *7 (S.D.Ala. Aug.27, 2007) (finding that the City of Mobile Police Department is not a suable entity under state law); *Pierre v. Schlemme*r, 932 F.Supp. 278, 279–80 (M.D.Fla.1996) (finding the Eleventh Circuit adheres to the approach that a city police department is not a separate legal entity which is subject to suit and is not a "person" for § 1983 purposes); *Eddy v. Miami*, 715 F.Supp. 1553, 1556 (S.D.Fla.1989) ("Where a police department is an integral part of the city government as the vehicle through which the city government fulfills its policing functions, it is not an entity subject to suit."); *Reese v. Chicago Police Dept.*, 602 F.Supp. 441, 443 (N.D.Ill.1984) (finding a police department does not have a legal existence separate from the city and, therefore, is not a suable entity)."); *Cheatham v. City of Tallassee*, 2012 WL 3890127, *6 (M.D. Ala. Sept. 7, 2012) (finding that the Tallassee Police Department was due summary judgment as to all claims brought against it).  Accordingly, the Howards' claims against the Demopolis Police Department are dismissed.

      2.  <u>The Howards' claims against Mayor Grayson in his official or individual capacity</u>.

      Defendants argue that there are no factual allegations or legal claims against Mayor Grayson but instead his name only appears in the style of the case.  They specifically point out that the Howards did not allege that Mayor Grayson supervised or trained Sergeant Bryant or developed any policies for the Demopolis Police Department.  The Howards did not respond to this argument.  Thus, the Court concludes that they have abandoned any

claims against Mayor Grayson.  *Edmondson*, 258 Fed. Appx. at 253 ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned");  *Floyd*, 274 Fed. Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599 ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); *Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) (the "district courts cannot concoct or resurrect arguments neither made nor advanced by the parties."); *Case v. Eslinger*, 555 F.3d 1317, 1329 (11th Cir. 2009) (a party "cannot readily complain about the entry of a summary judgment order that did not consider an argument [they] chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

Additionally, any claims against Mayor Grayson in his official capacity are essentially claims against the City of Demopolis, which has been sued directly.  *Kentucky v. Graham,* 473 U.S. 159, 165–166, 167 n.14 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. . . .  It is *not* a suit against the official personally, for the real party in interest is the entity." . . . "[T]here is no longer a need to bring official-capacity actions against local government officials for ... local government units can be sued directly for damages and injunctive and declaratory relief") (italics in original) (internal citations omitted).  Accordingly, summary judgment is granted in favor of Mayor Grayson and the Howards' claims against him in his individual and official capacity are dismissed.

3. The Howards' claims against Chief Reese in his official capacity.

In the complaint, the Howards allege generally that Chief Reese "in his capacity as Chief of Police, . . . is responsible for making and/or implementing policies and practices

used by law enforcement officers employed by the City regarding arrests and the use of force." (Doc. 1-1, p. 3)  Defendants argue that any claims against Chief Reese in his official capacity should be dismissed because the City of Demopolis is named as a defendant.  The Howards did not respond to this argument.  Thus, the Court concludes that the Howards have abandoned their claims against Chief Reese in his official capacity. *Edmondson*, 258 Fed. Appx. at 253 ("grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned");  *Floyd*, 274 Fed. Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599; *Fils*, 647 F.3d at 1284; *Case*, 555 F.3d at 1329.   Moreover, the claims against Chief Reese in his official capacity are essentially claims against the City of Demopolis, which has been sued directly.  *Kentucky v. Graham,* 473 U.S. at 165–166, 167 n.14.  Accordingly, summary judgment is granted in favor of Chief Reese in his official capacity and the Howards' claims against him in his official capacity are dismissed.

    4. The Howards' claims of constitutional violations (42 U.S.C. § 1983, Count One)

      In Count One, the Howards alleged that the "defendants" violated their constitutional rights under the Fourth, Fifth and Fourteenth Amendment including but not limited to "a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; c) the right not to be deprived of property without due process of law; d) the right to be free from excessive use of force by persons acting under color of state law; e) the right to be free from false arrest; and the right to just compensation for taking of property" (doc. 1-1, Count One, p. 5).   In support, the Howards re-alleged and incorporated by reference all of the factual allegations set forth in pages 1 through 8 of their complaint, but without specifying which factual allegations support which constitutional violation except to state that defendants "conducted an

unauthorized and warrantless search and seizure of" Mr. Howard, and "used excessive force in violation of" Mr. Howard's rights.

On motion for summary judgment, defendants argue that substantive due process is not implicated since excessive force claims, unreasonable search and seizure claims, and false arrest claims are analyzed under the Fourth Amendment and not under a substantive due process standard. They also argue that there was an adequate post-deprivation remedy such that procedural due process violations were not implicated. Defendants point out that since they are unaware of any property taken from the Howards, the Fifth Amendment's "takings clause" is not applicable to the facts in this case.

The Howards did not respond to the defendants' argument except to argue that certain rights under the Fourth Amendments have been violated by the defendants.[5] Thus, the Court concludes that they have abandoned any claims pursuant to the Fifth Amendment. *Edmondson*, 258 Fed. Appx. at 253; *Floyd*, 274 Fed. Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599; *Fils*, 647 F.3d at 1284; *Case*, 555 F.3d at 1329. Accordingly,

---

[5] Specifically, the right to be free from unreasonable searches and seizures, excessive use of force, and false arrest; all of which are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (italics in original); *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir.2010) ("The Fourth Amendment's [right to] freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest."); *Davis v. Williams*, 451 F.3d 759, 764 n. 8 (11th Cir. 2006) (". . . it is clearly established that an arrest made without probable cause violates the Fourth Amendment."); *Hamm v. Powell*, 893 F.2d 293, 294 (11th Cir.1990) (acknowledging that wrongful arrest and use of excessive force claims under § 1983 are analyzed under the Fourth Amendment ). Moreover, the Fourth Amendment has been made applicable to the States through the Fourteenth Amendment. *See Brescher v. Von Stein*, 904 F. 2d 572, 578 (11th Cir. 1990).

summary judgment is granted in favor of defendants as to any claims for constitutional violations under the Fifth Amendment, and those claims, if any, are dismissed.

   5.  The Howards' claim of excessive force against Sergeant Bryant

In Count One, the Howards allege that Mr. Howard's constitutional right under the Fourth Amendment to be free from excessive force has been violated because Sergeant Bryant struck him twice in the face, pulled him out of the van window, hit him again while he was on the ground, and then restrained him.  Mr. Howard's claim of excessive force occurring during his arrest is construed as arising under the Fourth Amendment.[6] *See Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir.2008) ("In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard.") (quoting *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596 (2004))).  In that regard, the Court must consider certain factors "in determining whether an officer's use of force was objectively reasonable, including '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the

---

[6]  The Eleventh Circuit has held that "a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Lee v. Ferraro*, 284 F.3d 1188, 1193 (11th Cir.2002) (quoting *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir.2000) (in turn citing *Williamson v. Mills*, 65 F.3d 155, 158–59 (11th Cir.1995))).  The Howards' complaint contains a claim of false arrest against Sergeant Bryant.  Thus, arguably their excessive force claim is "subsumed" in that claim.  However, in the response, the Howards assume for purpose of argument that if Mr. Howard did hit Sergeant Bryant and that Sergeant Bryant knocked Mr. Howard unconscious, then "any further force to subdue him was unnecessary." (Doc. 23, p. 14)  Therefore, the claims of excessive force and false arrest are analyzed separately.  *See Rigas v. City of Rogersville, Ala.,* 2013 WL 5229998 (N.D. Ala. Sept. 17, 2013) (slip copy) (stating that because Rigas did "not allege excessive force during the commission of a *legal* arrest, even as an alternative basis for recovery, any claim for excessive force is subsumed under [his] false arrest claims") (italics in original).

force was applied in good faith or maliciously and sadistically.' " *Hadley*, 526 F.3d at 1329 (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)).

Defendants argue that there is no dispute of fact that Mr. Howard struck Sergeant Bryant and that the amount of force applied during the arrest was not excessive. Alternatively, they argue that if the amount of force applied was found to be excessive, Sergeant Bryant is still entitled to qualified immunity. Defendants argue that the testimony of the four police officers is un-contradicted evidence that Mr. Howard struck Sergeant Bryant, despite Mr. Howard's statements to the contrary.

However, the Court finds that there is a material issue of fact as to whether Mr. Howard struck Sergeant Bryant and whether the use of this force was excessive. Defendants argue that there is no evidence in Mr. Howards' favor because he cannot remember whether he struck Sergeant Bryant and because his post-deposition affidavit contradicts his deposition testimony. The Court disagrees and finds that the affidavit does not contradict the deposition. Mr. Howard's statements that he did not strike Sergeant Bryant are based on his "first-hand personal knowledge, not [his] subjective beliefs" and "they directly contradict the officers' assertions". *Feliciano v. City of Miami Beach*, 707 F. 3d 1244, 1253 (11th Cir. 2013) ("The contradiction presents a classic swearing match, which is the stuff of which jury trials are made.")

"When considering a motion for summary judgment, including one asserting qualified immunity, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and when conflicts arise between the facts evidenced by the parties, [they must] credit the nonmoving party's version. Even if a district court

believes that the evidence presented by one side is of doubtful veracity,[7] it is not proper to

grant summary judgment on the basis of credibility choices." *Feliciano*, 707 F. 3d at 1252

(citations omitted) (internal quotations omitted).  "This is because credibility

determinations and the weighing of evidence 'are jury functions, not those of a judge.'" *Id.*

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986)).  A

determination as to whether Mr. Howard struck Sergeant Bryant is material to whether

Sergeant Bryant needed to apply the force used to arrest Mr. Howard and to whether the

force was applied in good faith or maliciously or sadistically.  Moreover, the prohibition

against excessive force is clearly established such that Sergeant Bryant could not claim

immunity if he engaged in the alleged behavior.   Accordingly, summary judgment is denied

as to Mr. Howard's claim of excessive force against Sergeant Bryant.

    6. The Howards' claims pursuant to 42 U.S.C. § 1983 against the City of Demopolis

(Use of Excessive Force, Count Two)

    The City may be a defendant under Section 1983.  Title 42 United States Code,

Section 1983 sets forth as follows:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party

---

[7]  "As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning that it relates to facts that could not have possibly been observed or events that are contrary to the laws of nature." *Feliciano*, 707 F. 3d at 1253-1254 (citing *Scott v. Harris*, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) (holding that a court should not adopt a party's version of the facts when it is "blatantly contradicted by the record" in the form of videotaped evidence)).

> injured in an action at law, suit in equity, or other proper proceeding for
> redress . . .

42 U.S.C. § 1983.  Local governments, such as the City of Demopolis, are considered

"persons" for the purposes of the statute and may be subject to liability. *Monell v. Dept. of*

*Soc. Servs.*, 436 U.S. 658, 690, 98 S. C.t 2018 (1978); *McDowell v. Brown*, 392 F.3d 1283,

1289 (11th Cir. 2004).

　　The Howards allege that the City adopted policies, procedures, practices or customs

within the Demopolis Police Department that allow the use of excessive force and that the

City's actions "amount to deliberate indifference" to Mr. Howard's constitutional right to be

free from excessive force.[8]  On motion for summary judgment, the defendants argue that

the Howards cannot show that the City has an unconstitutional policy, which can be

attributed to a municipal policymaker or inadequate police training.  The defendants point

out that the Police Department's Standard Operating Procedure (SOP) includes Use of

Force policies and procedures and that Sergeant Bryant had been trained on the Use of

Force and had been trained in regard to addressing the mentally ill.

　　The Howards "cannot rely upon the theory of *respondeat superior* to hold the C[ity]

liable" for Sergeant Bryant's actions. *McDowell,* 392 F. 3d at 1289.  Instead, the Howards

must "prove that [the City] had a 'policy or custom' of deliberate indifference that led to the

violation of [Mr. Howard's] constitutional right." *Craig v. Floyd County, Ga.*, 643 F.3d 1306,

---

[8]  Embedded in Count Two is the allegation that Mr. Howard's right to be free of
unreasonable seizure was violated.  However, in the response to the motion for summary
judgment, the Howards addressed only the City's liability for his alleged use of excessive
force.  Therefore, the Court concludes that the Howards have abandoned any claim against
the City for liability for Sergeant Bryant's alleged unreasonable seizure. *Edmondson*, 258
Fed. Appx. at 253; *Floyd*, 274 Fed. Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599; *Fils*,
647 F.3d at 1284;  *Case*, 555 F.3d at 1329.

1310 (11th Cir. 2011) (quoting *Monell*, 436 U.S. at 694, 98 S. Ct. 2037-2038).   To do so, they

must show  "a direct causal link between a municipal policy or custom and the alleged

constitutional deprivation." *Snow ex rel. Snow v. City of Citronelle, AL*, 420 F.3d 1262, 1271

(11th Cir.2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989)).

To do so, Mr. Howard must show: "(1) that his constitutional rights were violated; (2) that

the municipality had a custom or policy that constituted deliberate indifference to that

constitutional right; and (3) that the policy or custom caused the violation." *McDowell,* 392

F.3d at 1289 (citing *Canton*, 489 U.S. at 388).   Since municipalities generally do not have

official policies that endorse a constitutional violation, the Howards must show that the

City had a custom or practice of permitting the alleged violations.  *Craig*, 643 F.3d at 1310

(quoting *Grech v. Clayton County, Ga*., 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*)).

Moreover, the policy, custom, or practice must be the "moving force" behind the

constitutional violation and not just "tangentially related to a constitutional deprivation."

*Cuesta v. Sch. Bd. of Miami–Dade Co*., 285 F.3d 962, 967 (11th Cir. 2002).

      The Howards argue that the SOP did not contain written procedures for the use of

force when interacting with the mentally ill, but instead contained only generic instructions

for use of force.  They argue that because of this inadequacy, the City failed to establish

policies or procedures to prevent Fourth Amendment violations for use of excessive force

when dealing with the mentally ill, and therefore, is liable to Mr. Howard.  The Howards

appear to assert that the absence of a written policy specifically addressing the mentally ill,

shows a custom or practice of deliberate indifference to his constitutional rights, which

resulted in Sergeant Bryant's use of excessive force.

Assuming for purposes of summary judgment that Mr. Howard's constitutional rights were violated, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability against" the City. *Craig*, 643 F.3d at 1310 (quoting *City of Okla. City v. Tuttle*, 471 U.S. 808, 823–24, 105 S. Ct. 2427, 2436 (1985) (plurality opinion)) (internal quotations omitted). The Howards would need to show a "pattern of similar constitutional violations[.]" *Craig*, 643 F.3d at 1310. "A single incident would not be so pervasive as to be a custom, . . . because a custom must be such a longstanding and widespread practice [that it] is deemed authorized by the policymaking officials because they must have known about it but failed to stop it[.]" *Id.*, citing *Grech*, 335 F.3d at 1330 n.6, and *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991)) (internal citations and quotations omitted). The Howards have presented no evidence that the police officers for the City of Demopolis have used excessive force against other mentally ill persons. Moreover, the Howards present no evidence that the absence of a written policy regarding use of force when interacting with the mentally ill, was the "moving force" behind Sergeant Bryant's actions.

Since the Howards have not shown a series of "constitutional violations from which deliberate indifference can be inferred" they "must show that the policy itself is unconstitutional." *Craig*, 643 F.3d at 1311 (citing *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir.2000)). In that regard they appear to rely on the decision in *Rivas v. Freeman*, 940 F. 2d 1491, 1495 (11th Cir. 1991) for the premise that if a final policymaker, such as the City, "fails to establish policies and procedures to prevent constitutional intrusions by police officer under [its] command, 'liability may be imposed due to the existence of an improper policy or the absence of a policy.'" From this, the

Howards appear to reason that the City's SOP is unconstitutional because it does not have a written policy for addressing use of excessive force when interacting with the mentally ill, *i.e.,* the "absence of a policy". However, the Howards did not present any case law wherein a city's police procedures have been held unconstitutional because there were no specifically delineated procedures for use of force when interacting with the mentally ill. The Court declines to make the Howards' constitutional argument for them. *See Case*, 555 F.3d at 1329 (11th Cir. 2009) (a litigant "cannot readily complain about the entry of a summary judgment order that did not consider an argument they chose not to develop for the district court at the time of the summary judgment motions") (citation omitted).

Additionally, in *Rivas*, the sheriff was found liable for wrongful arrest and incarceration resulting from mistaken identity where similar arrests had previously occurred but the sheriff had no procedures or written policy to monitor or account for inmates in the jail. Again, the Howards present no evidence that Sergeant Bryant or any officer with the Demopolis Police Department had had a similar altercation with a mentally ill person such that the City would have been aware of this alleged inadequacy of its SOP, and acted with deliberate indifference. [9]

---

[9] The undisputed evidence shows that the City trained its officers regarding interaction with the mentally ill. The Howards admit as much in their statement of facts: The "Demopolis Police Department had mandatory in-service training in community policing and the mentally ill. The goal of the training provided to the Demopolis Police Department was to help police officers to know the signs and symptoms exhibited by persons with mental illness so that they would know how to deal effectively with them. The training emphasized that there are some circumstances when an officer should stop talking, step back and try to defuse a crisis situation when it involves a person with mental illness. The training taught the officers to be sensitive to the fact that a person has a mental illness. The training taught the officers to stay a reasonable distance from the mentally ill person to avoid being struck. The training also taught officers to avoid any aggressive moves toward the mentally ill person. 'You are to treat him just like he was normal and try not to insult

At the summary judgment stage, the Howards must "set forth specific facts supported by the requisite evidence to establish the existence of an element essential to [their] case and on which they will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir.1997) ("Holifield's conclusory assertions to the contrary, in the absence of supporting evidence, are insufficient to withstand summary judgment") (citations omitted)). Because the Howards have failed to present sufficient evidence to support this allegation against the City, defendants' motion for summary judgment as to Count Two is granted and this claim against the City is dismissed.

7. False arrest pursuant to 42 U.S.C. § 1983 against Sergeant Bryant (Count Three)

The Howards allege that Sergeant Bryant, acting under color of law, falsely arrested Mr. Howard and violated his constitutional rights. Defendants argue that viewing the evidence in the light most favorable to the Howards, establishes that Sergeant Bryant had probable cause to arrest Mr. Howard because "[i]t is undisputed by the four officers on the scene that Louis Howard struck Sergeant Bryant in the face as he swung out the passenger window." Defendants assert that Mr. Howard cannot remember what happened and cannot dispute the officers' testimony. The Howards argue that because Mr. Howard did not hit Sergeant Bryant, neither an assault nor harassment charge was appropriate.

The Court has determined that there is a dispute of fact as to whether Mr. Howard struck Sergeant Bryant. This fact is material to a determination whether Sergeant Bryant had probable cause to arrest Mr. Howard for either assault under Code of Alabama § 13A-6-

---

him.' The training further taught officers to de-escalate the situation when dealing with someone who has a mental illness or disease. The training emphasized calling the paramedics to assist with someone who had a mental illness. " (Doc. 23, p. 7-8)

21 or harassment under Code of Alabama §13A-11-8, and thus whether, he violated Mr.

Howard's rights under the Fourth Amendment to be free from an unreasonable seizure or

arrest. "A warrantless arrest without probable cause violates the Fourth Amendment and

forms a basis for a section 1983 claim." *Ortega v. Christian*, 85 F. 3d 1521, 1525 (11th Cir.

1996). "If probable cause for arrest exists, however, then the individual has no claim for

false arrest under § 1983." *Arrington v. Kinsey*, 512 Fed. Appx. 956, 958 (11th Cir. 2013).

Accordingly, summary judgment is denied as to Count Three against Sergeant Bryant.

    8. Negligent Supervision (Count Four)

    The Howards plead Count Four for negligent supervision alleging that Chief Reese

"undertook to train and supervise" the City of Demopolis police officers and "negligently

supervised Defendant Sgt. Bryant by failing to provide proper training and outline proper

procedure in confronting mentally ill persons." Defendants argue that any claims against

Chief Reese in his personal or individual capacity for negligent training and supervision

should be dismissed on grounds of state-agent immunity because his conduct falls within

the factors identified in *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2003). The Howards

did not respond to the defendants' argument. Thus, the Court concludes that they have

abandoned this claim as to Chief Reese. *Edmondson*, 258 Fed. Appx. at 253; *Floyd*, 274 Fed.

Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599; *Fils*, 647 F.3d at 1284; *Case*, 555 F.3d at

1329.

    Defendants also argue that there is no cause of action under Alabama law against

the City of Demopolis for Chief Reese's negligent hiring, supervising or training a

subordinate, Sergeant Bryant, and therefore, the Howards fail to state a claim upon which

relief can be granted. The Howards did not respond to the defendants' argument. Thus, the

Court concludes that they have abandoned this claim against the City. *Edmondson*, 258 Fed. Appx. at 253; *Floyd*, 274 Fed. Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599; *Fils*, 647 F.3d at 1284; *Case*, 555 F.3d at 1329.

However, while historically, "no Alabama court has expressly recognized a cause of action against a municipality for a supervisor's negligent training or supervision of a subordinate[,] " *Borton v. City of Dothan*, 734 F. Supp. 2d 1237 (1258-1259) (M.D. Ala. 2010) (citations omitted); *Hamilton v. City of Jackson*, 508 F.Supp.2d 1045, 1057–58 (S.D. Ala. 2007); *Ott v. City of Mobile,* 169 F.Supp.2d 1301, 1314–1315 (S.D. Ala.2001), in *Hughes v. City of Montgomery*, the district court found that "[a]lthough many federal district courts have made this statement over the years, the statement may no longer be accurate[]" because the "Alabama Supreme Court recently recognized the potential for a negligent hiring, training, and supervision claim against the City of Montgomery".  2013 WL 5945078, *2 (M.D. Ala. Nov. 6, 2013) (slip copy) (citing *Ex parte City of Montgomery*, 99 So. 3d 282 (Ala. 2012)).

Based upon the decision in *Ex parte City of Montgomery*, the district court analyzed whether the City of Montgomery was entitled to immunity from suit for the negligent hiring, training, and supervision of a police officer pursuant to Alabama statutory and case law, and held that because the Police Chief was a "peace officer, state-agent immunity protects him and the city from suit based on negligence in his discretionary acts in hiring, training and supervising" the police officer. *Id.* at *3.  Thus, even should such a cause of action exist, the Howards have failed to present any evidence that Chief Reese was not entitled to immunity from suit and thus, he and the City of Demopolis are protected by state-agent immunity.  Moreover, should such a cause of action exist against a municipality,

the Howards must proffer affirmative proof that Sergeant Bryant's incompetence was actually or constructively known by Chief Reese and the City. *Borton*, 734 F. Supp. 2d at 1259. They have provided no evidence to support this element. Accordingly, summary judgment is granted in favor of the City and Chief Reese and the Howards' negligent supervision claim is dismissed.

      9. <u>Negligence against Sergeant Bryant (Count Five)</u>

The Howards allege that Sergeant Bryant "negligently, recklessly or unskillfully assaulted and arrested" Mr. Howard. Defendants argue that Sergeant Bryant is entitled to state-agent immunity as to this state law claim because there is no dispute of fact that he was exercising judgment in the enforcement of the criminal laws of the state while arresting Mr. Howard, *i.e.*, a discretionary function. Defendants argue that there is no evidence that Sergeant Bryant's actions fall within any exception to state-agent immunity. The Howards argue that Sergeant Bryant's striking Mr. Howard, pulling him out the van window, throwing him on the ground, and handcuffing him establishes that he acted in bad faith, with malice or willfully, and therefore, is not entitled to state-agent immunity.

Under Alabama law, Sergeant Bryant, as a city police officer, is immune from tort liability "arising out of his [] conduct or performance of any discretionary function within the line and scope of his [] law enforcement duties." Ala. Code § 6–5–338(a). This rule of immunity was initially stated in *Ex parte Cranman*, 792 So.2d 392 (Ala.2000) and later revised in *Hollis v. City of Brighton*, 950 So.2d 300 (Ala.2006). In relevant part, the Court in *Hollis* explained that category (4) of *Cranman*, was modified to read

> "A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's

"....

"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala.Code 1975."

*Hollis*, 950 So. 2d at 309. [10]   However, Sergeant Bryant would not be immune from civil liability, if he acted "willfully, maliciously, fraudulently, in bad faith, beyond his [] authority, or under a mistaken interpretation of the law." *Hollis*, 950 So. 2d at 308 (quoting *Cranman*, 792 So. 2d. at 405).

The Court has determined that there is a dispute of fact as to whether Mr. Howard struck Sergeant Bryant before he struck Mr. Howard.  This issue of fact is material to a determination as to whether Sergeant Bryant acted in a manner that would preclude application of state-agent immunity.  Accordingly, summary judgment is denied as to Count Five against Sergeant Bryant.

9.  Malicious prosecution (Count Seven)

a) The Howards' plead Count Seven for malicious prosecution against all "defendants", which possibly could include a claim against the City.  However, the "Alabama Supreme Court has held that claims alleging intentional torts against municipalities are barred under" Ala. Code § 11-47-190.[11] *Walker v. City of Huntsville*, 62 So.3d 474, 501–02

---

[10]   In *Blackwood v. City of Hanceville*, 936 So.2d 495, 504 (Ala.2006), the Court explained that by enacting Ala. Code § 6-5-338, the Legislature extended to municipal law enforcement officers the same immunity as that of state law enforcement officers "performing their discretionary functions within the line and scope of their law enforcement duties".  (citations omitted).

[11]  "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the

(Ala. 2010) (finding that claims of malicious prosecution, tort of outrage, and invasion of privacy against the City of Huntsville are intentional torts and barred by § 11–47–190). Therefore, the City may be found liable for the negligent acts of its employees but not their intentional torts. *Brown v. City of Huntsville, Ala*., 608 F.3d 724, 743 (11th Cir. 2010) ("In sum, under § 11–47–190, a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees."). Accordingly, summary judgment is granted in favor of the City and the Howards' malicious prosecution claim against the City is dismissed.

b) Because they have pled this count against the "defendants", the Howards' possibly allege a claim for malicious prosecution against Chief Reese in his individual capacity as Sergeant Bryant's supervisor. Defendants moved to dismiss on basis that the Howards could not produce evidence in support of the elements of the claim. In response, the Howards assert that the elements are met and that Sergeant Bryant maliciously prosecuted Mr. Howard by filing the charge of harassment against him. However, to the extent that they attempt to assert this claim against Chief Reese, "[i]t is [ ] well established in this [c]ircuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Miller v. King*, 384 F.3d 1248, 1261 (11th Cir. 2004) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)), vacated on other grounds, 449 F.3d 1149 (11th Cir. 2006). Chief Reese as a supervisory official may be liable under § 1983, only if he personally participated in the alleged malicious prosecution or if there is a causal

---

municipality engaged in work therefor and while acting in the line of his or her duty." Ala. Code § 11-47-190.

connection[12] between his official actions and the alleged constitutional deprivation. *Ganstine v. Williams*, 476 Fed.Appx. 361, 363 (11th Cir. 2912)(quoting *Cottone,* 326 F.3d at 1360). Thus, the Howards must plead that Chief Reese, through his individual actions, has violated Mr. Howard's constitutional rights. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The Howards' pled in their complaint and delineated in their response, only the actions taken by Sergeant Bryant.[13] They did not present any evidence from which a jury could reasonably infer that Chief Reese participated in or was connected to the alleged malicious prosecution. Accordingly, summary judgment is granted in favor of Chief Reese and the Howards' malicious prosecution claim against Chief Reese is dismissed.

c) As to Sergeant Bryant, defendants argue that the Howards have failed to establish the necessary elements of a malicious prosecution claim. The Howards distinguish the case upon which defendants rely and point out that Sergeant Bryant completed a police report and filed a complaint in the municipal court, that Ms. Howard had to post a bond, and assert that the "decision to prosecute hinged solely on Sgt. Bryant's complaint." (Doc. 23, p. 20) They did not respond to the defendants' argument that the prosecution was not terminated in favor of Mr. Howard.

---

[12] "A plaintiff may establish a causal connection by showing that: (1) a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fail[ed] to do so; (2) the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights; or (3) facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Hendrix v. Tucker,* - - - Fed. Appx. - - -, 2013 WL 4504595, 1 (11th Cir. 2013) (citations omitted)(internal quotation marks omitted).

[13] Plaintiffs state that "Defendants maliciously and without probably cause therefore, arrested Plaintiff . . ." (doc. 1-1). However, the Howards raised no allegation of fact that Chief Reese participated or was causally connected to the arrest. Instead, their factual allegations indicate that Sergeant Bryant arrested Mr. Howard.

In *Grider v. City of Auburn*, 618 F.3d 1240 (11th Cir. 2010), the Eleventh Circuit explained that it had "identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983" and that while both state and federal law "inform[ed] the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Id.*, at 1257 (citation omitted). The Circuit Court then explained that

> [t]o establish a § 1983 malicious prosecution claim, the plaintiff must prove two things: (1) the elements of the common law tort of malicious prosecution; and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir.2004); *Wood [v. Kesler*], 323 F.3d [872,] 881 [(11th Cir.2003)]. As to the first prong, the constituent elements of the common law tort of malicious prosecution are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood*, 323 F.3d at 882. The elements under Alabama law for the common-law tort of malicious prosecution are the same, except that they require only a "judicial proceeding" not a "criminal prosecution." *Delchamps, Inc. v. Bryant,* 738 So.2d 824, 831–32 (Ala.1999).

*Id.*, at 1256 (11th Cir.2010) (footnote omitted).

The Court has determined that there is a dispute of fact as to whether Mr. Howard struck Sergeant Bryant before he struck Mr. Howard. This dispute of fact is material to a determination whether Sergeant Bryant violated Mr. Howard's right to be free from unreasonable seizures and upon whether he acted with malice and without probable cause in arresting Mr. Howard for harassment.

Additionally, the undisputed facts establish that the Municipal Court Judge for the City of Demopolis dismissed the criminal charges against Mr. Howard by noting "Dismissed.

Sheriff Bates' request." (Doc. 20-10, Case Action Summary, State v. Howard, MC-11-351, "Bench Notes: Dismissed.  Sheriff Bates' request", dated June 6, 2011, Demopolis Municipal Court).  In *Uboh v. Reno*, 141 F. 3d 1000, 1004-1005 (11th Cir. 1998), the Eleventh Circuit stated that "[c]ourts have [ ] reasoned that only terminations that indicate that the accused is innocent ought to be considered favorable. . . .  Thus, courts have found that withdrawal of criminal charges pursuant to a compromise or agreement does not constitute favorable termination . . . Similarly, courts have refused to permit a finding of favorable termination where the stated basis for the dismissal of criminal charges has been in the interests of justice, or where a conviction has been reversed and the cause expressly remanded for retrial[.]"  The Circuit Court also explained that "[c]onsistent with each of the policies underlying the favorable termination requirement, however, courts have found favorable termination to exist by virtue of . . . an order of dismissal reflecting an affirmative decision not to prosecute, . . . [and] an entry of a nolle prosequi[.]" *Id.,* at 1005.

The Municipal Court Judge's order indicates that the Sheriff's request for dismissal was granted.  From the Sheriff's actions, a finder of fact could reasonably infer that there had been an affirmative decision not to prosecute Mr. Howard.  *See Woodard v. Town of Oakman*, 885 F. Supp. 2d 1216, 1233-1234, (N.D. Ala. 2012) (drawing all reasonable inferences from Woodard's assertion that the Town abandoned the criminal charges against him, the district court found it likely that the evidence would show that the Town "made an affirmative decision not to prosecute.").  Accordingly, summary judgment is denied as to Mr. Howard's claim for malicious prosecution against Sergeant Bryant.

10. The Howards' state law claims for outrage and assault (Counts Six and Eight)

Defendants argue that the Howards' claim for outrage should be dismissed because this is an extremely limited cause of action and the defendants' actions do not rise to the level of outrage as established by Alabama law. Defendants also argue that the Howards' claim for assault raises the identical issues as the § 1983 claim alleging excessive force and that the force used was not excessive.

The Howards did not respond to either argument. Thus, the Court concludes that they have abandoned their state law claims for outrage and assault against the defendants. *Edmondson*, 258 Fed. Appx. at 253; *Floyd*, 274 Fed. Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599; *Fils*, 647 F.3d at 1284; *Case*, 555 F.3d at 1329. Therefore, summary judgment is granted in favor of the defendants and the Howards' state law claims for assault and outrage are dismissed.

### 11. Ledora Howard's claim for loss of consortium (Count Nine)

Defendants argue that Ms. Howard's claim fails as a matter of law because she did not meet the statutory prerequisites for filing a tort claim against the City of Demopolis. Specifically, she did not file a timely notice and a sworn statement with the City Clerk as required by Alabama Code § 11-47-23 and § 11-47-192. Ms. Howard did not respond to this argument and did not dispute the allegation that she had not met the statutory prerequisites. Thus, the Court concludes that she has abandoned her claim for loss of consortium. *Edmondson*, 258 Fed. Appx. at 253; *Floyd*, 274 Fed. Appx. at 765; *Resolution Trust Corp.*, 43 F.3d at 599; *Fils*, 647 F.3d at 1284; *Case*, 555 F.3d at 1329.

Moreover, "[p]ursuant to Ala. Code § § 11–47–23 and 11–47–192, no claim will lie against a city or town for personal injury unless a sworn statement by the party injured is filed with the city clerk within six months of the date of injury." *Cobb v. Aponte*, 2010 WL

2609279, *2 (M.D. Ala. 2010)(noting that the statutes are to be read "*in pari materia*"). "The law is well-settled in Alabama that a sworn statement is a prerequisite before a suit against a city or municipality is allowed to proceed." *Id.* Accordingly, summary judgment is granted in favor of defendants and Ms. Howard's claim is dismissed.

IV. Conclusion

In accordance with foregoing analysis, the defendants' motion for summary judgment is GRANTED as to all claims against the City of Demopolis, Mayor Grayson, Chief Reese, and the Demopolis Police Department; summary judgment is granted in favor of Sergeant Bryant as to Count Six for assault, Count Eight for outrage, and Count Nine for loss of consortium; and denied as to Sergeant Bryant as to Count One for excessive force, Count Three for false arrest, Count Five for negligence, and Count Seven for malicious prosecution.

DONE and ORDERED this the 25th day of November 2013.

s/ Kristi K. DuBose
KRISTI K. DuBOSE
UNITED STATES DISTRICT JUDGE